WO                                                                                                                    **JWB**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bernard E. Colonna, | No. CV 06-0393-PHX-SMM (MHB) |
| Plaintiff, | **ORDER** |
| vs. | |
| CSC Corporation, et al., | |
| Defendants. | |

Before the Court is Defendants' Motion for Summary Judgment (Doc. # 27), Plaintiff's Response (Doc. # 31), and Defendants' Reply thereto (Doc. # 32). After a careful review of the pleadings and record in this case, the Court will grant Defendants' motion and dismiss this action with prejudice.

**I.    Background**

Plaintiff filed this action on February 6, 2006, against Defendants Correctional Service Corporation (C.S.C.), Warden Charles Goldsmith, Assistant Warden Mauldin, Disciplinary Coordinator Jackson, and Medical Administrator Shawn Starr (Doc. # 1). Plaintiff, who is presently in the custody of the Arizona Department of Corrections (ADC), has been housed at several different facilities since December 8, 2004 (Doc. # 24, Ex. A at 1). His claim arose during his confinement at the Florence West Prison in Florence, Arizona (Doc. # 1 at 1). Plaintiff was housed at that facility between December 17, 2004 and March 1, 2005 (Doc. # 25, Ex. A at 1).

On December 21, 2004, Plaintiff was assaulted in the Florence West Unit (id.). Plaintiff sustained a broken jaw that required surgery, which Plaintiff received at the

1  Maricopa Medical Center approximately two weeks after the assault (Doc. # 24, Ex. A at 1-
2  2). On February 6, 2005, Plaintiff claims that he was assaulted two more times (Doc. # 24,
3  Ex. A at 2). The next day, Plaintiff was taken to a single cell and was eventually moved to
4  the Kingman complex on March 1, 2005 (id. at 2-3).

5  Plaintiff's Complaint presents two claims for relief. In Count I, Plaintiff alleged that
6  C.S.C., Goldsmith, Mauldin, and Jackson failed to ensure Plaintiff's safety after he was the
7  victim of the unprovoked attack (Doc. # 1 at 4). Count II alleged that Starr failed to properly
8  treat Plaintiff's medical condition, which resulted in cardiac damage, respiratory ailments,
9  swollen legs, and high and low blood sugar levels (Doc. # 1 at 5).

10  The Court required Defendants to answer the Complaint (Doc. # 10). On December
11  27, 2006, Plaintiff filed a "Notice of Discovery" that contained attachments totaling 234
12  pages of various medical records, grievances, and correspondence (Doc. ## 24-25). On
13  March 19, 2007, Defendants moved for summary judgment (Doc. # 27).

14  **II.   Plaintiff's Proffered Discovery**

15  On December 27, 2006, Plaintiff filed 234 pages of documents with the Court. These
16  documents consist of medical records, inmate letters, and other affidavits by Plaintiff. In his
17  Response to Defendants' summary judgment motion, however, Plaintiff generally references
18  this panoply of discovery, but only specifically references Exhibits A and G. Therefore, at
19  the outset, the Court notes that it is "not required to comb the record to find some reason to
20  deny a motion for summary judgment," Carmen v. San Francisco Unified Sch. Dist., 237
21  F.3d 1026, 1029 (9th Cir.2001) (quotation omitted). "If the district court . . . searches the
22  whole record, in practical effect, the court becomes the lawyer." Id. at 1031.

23  **III.  Parties Contentions**

24  Defendants' summary judgment motion contends that Plaintiff cannot point to any
25  facts or evidence that would support his claim of deliberate indifference to his safety or
26  serious medical needs (Doc. # 27 at 6-7). Specifically, Defendants contend that after Plaintiff
27  was assaulted in December 2004 he was treated for the injuries he sustained and transferred
28  several times to protect his safety (id.). Defendants argue they had no knowledge of any

- 2 -

1  attack before it occurred, and acted reasonably to protect Plaintiff after it occurred.
2  Regarding Plaintiff's claim for deliberate indifference to his serious medical needs, Starr
3  contends that he was not deliberately indifferent to Plaintiff (id.).

4  Plaintiff's Response to Defendants' motion contends that the discovery evidence he
5  submitted establishes the significant decline in his health.  Specifically, Plaintiff referred to
6  a letter from Plaintiff's personal physician stating that Plaintiff's health is worse than before
7  his incarceration (Doc. # 31 at 2).  As to Plaintiff's failure to protect claim, Plaintiff states
8  that the Defendants were aware of the problems with overcrowding and understaffing and
9  failed to take action to prevent the assault on Plaintiff (Doc. # 31 at 3).  Moreover, Plaintiff
10 claims that if Defendants had properly followed the ADC's procedure for segregating
11 inmates (Director's Instruction (DI) 67), then Plaintiff would not have been assaulted twice
12 more in February 2005 (id.).

13 Defendants replied that Plaintiff failed to introduce any facts or evidence to support
14 his claim that any Defendant was aware of any risk to Plaintiff's health or safety and failed
15 to act (Doc. # 32).

16 **IV.    Legal Standards**

17 **A.    Summary Judgment Standard**

18 A court must grant summary judgment if the pleadings and supporting documents,
19 viewed in the light most favorable to the non-moving party, "show that there is no genuine
20 issue as to any material fact and that the moving party is entitled to judgment as a matter of
21 law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
22 Under summary judgment practice, the moving party bears the initial responsibility of
23 presenting the basis for its motion, and identifying those portions of the record, together with
24 affidavits, which it believes demonstrate the absence of a genuine issue of material fact.
25 Celotex Corp., 477 U.S. at 323.  If the moving party meets its initial responsibility the burden
26 then shifts to the opposing party who must demonstrate that the fact in contention is material,
27 i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v.
28 Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the

1  evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.
2  at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The
3  opposing party need not establish a material issue of fact conclusively in its favor; it is
4  sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the
5  parties' differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv.
6  Co., 391 U.S. 253, 288-89 (1968). But there is no issue for trial unless there is sufficient
7  evidence favoring the nonmoving party. Anderson, 477 U.S. at 249. Summary judgment is
8  warranted if the evidence is "merely colorable" or "not significantly probative." Id. at 149-
9  50.

### B.  Deliberate Indifference to Safety

11  "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of
12  other prisoners." Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005) (internal
13  quotations omitted). "The failure of prison officials to protect inmates from attacks by other
14  inmates may rise to the level of an Eighth Amendment violation when: (1) the deprivation
15  alleged is 'objectively, sufficiently serious' and (2) the prison officials had a 'sufficiently
16  culpable state of mind,' acting with deliberate indifference." Id. "'[D]eliberate indifference
17  entails something more than mere negligence ... [but] is satisfied by something less than acts
18  or omissions for the very purpose of causing harm or with knowledge that harm will result.'"
19  Id. "Deliberate indifference occurs if the prison official knew that the inmate faced a
20  substantial risk of serious harm and disregarded that risk by failing to take reasonable
21  measures to abate it." Id. at 1042. Prison officials who know of a substantial risk to an
22  inmate's safety "may be found free from liability if they responded reasonably to the risk,
23  even if the harm ultimately was not averted." Farmer v. Brennan, 511 U.S. 825, 844 (1994).

### C.  Deliberate Indifference to Serious Medical Needs

25  States are prohibited by the Eighth Amendment from incarcerating inmates in
26  conditions that constitute cruel and unusual punishment of confinement. Pursuant to this
27  obligation, state officials who act with deliberate indifference to an inmate's serious medical
28  needs are liable in a § 1983 action. Estelle v. Gamble, 429 U.S. 97, 103 (1976). The Eighth

- 4 -

1 Amendment also prohibits deliberate indifference that subjects an inmate to an excessive risk
2 of future harm. Helling v. McKinney, 509 U.S. 25, 33 (1993). "[D]eliberate indifference to
3 a prisoner's serious medical needs is the 'unnecessary and wanton infliction of pain.'"
4 Estelle, 429 U.S. at 104-05. A state prison official is deliberately indifferent if he both
5 knows of and disregards an excessive risk to an inmate's health. Farmer v. Brennan, 511
6 U.S. 825, 837 (1994). Thus, to establish deliberate indifference, a plaintiff must establish
7 that the alleged harm was "sufficiently serious" and that the official acted with a "sufficiently
8 culpable state of mind." Id. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298, 302-3
9 (1991)). Mere negligence or medical malpractice does not establish a sufficiently culpable
10 state of mind. Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980).
11 However, a prisoner does not have to prove that he was completely denied medical care in
12 order to demonstrate deliberate indifference. Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir.
13 2000). Deliberate indifference may be shown when an official denies, delays, or
14 intentionally interferes with treatment or by the way that a medical professional provided the
15 care. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). "[A] mere 'difference of medical
16 opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference.'"
17 Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (citations omitted). To prevail on
18 a claim involving choices between alternative courses of treatment, a prisoner must show that
19 the course of treatment the doctors chose was medically unacceptable in light of the
20 circumstances and that it was chosen in conscious disregard of an excessive risk to plaintiff's
21 health. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

22 When a prisoner attempts to hold a prison employee responsible for deliberate
23 indifference, the prisoner must establish individual fault. Leer v. Murphy, 844 F.2d 628, 634
24 (9th Cir. 1988). Sweeping conclusory allegations will not be sufficient to prevent summary
25 judgment. Id. "The prisoner must set forth specific facts as to each individual defendant's
26 deliberate indifference." Id. at 634. He must prove that the specific prison official was
27 deliberately indifferent and that this indifference was the actual and proximate cause of the
28 injury. Id.

## V. Analysis

### A. Deliberate Indifference to Safety

Defendants' summary judgment motion contends that no Defendant had any knowledge that Plaintiff was going to be attacked in December 2004 and after Plaintiff was attacked, Defendants took reasonable action by placing Plaintiff in protective custody (Doc. # 27 at 7). Further, Defendants argue that after Plaintiff was assaulted in the medical unit following his surgery, he was moved to a private cell and then to the Kingman prison for his safety (id.). In sum, Defendants contend that none of Plaintiff's proffered evidence indicates that Defendants were aware of and disregarded a substantial risk to Plaintiff's safety.

In response, Plaintiff argues that "Defendants . . . were aware of the repeated problems at Florence West with overcrowding and understaffed personnel [and] assaults" (Doc. # 31 at 3). But there is no evidence to suggest that the December 2004 assault on Plaintiff was related to overcrowding. Plaintiff, in his Response, fails to point to a single piece of evidence in the record to support his conclusion that Defendants were aware of and disregarded a risk to his safety prior to the December 2004 attack. As stated, sweeping conclusory allegations are insufficient to defeat summary judgment, Leer, 844 F.2d at 634, and Defendants are entitled to summary judgment regarding the December 2004 attack.

As for the subsequent attack in February, Plaintiff contends that the fact he was placed in protective custody and was assaulted again *ipso facto* establishes that Defendants were deliberately indifferent (Doc. # 31 at 4). But Plaintiff is mistaken. As noted above, prison officials who know of a substantial risk to an inmate's safety "may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844. The question, therefore, becomes whether Defendants actions were reasonable after Plaintiff's first attack.

The undisputed evidence shows that Plaintiff was taken to the Florence West Medical Unit at the beginning of February 2005 (Doc. # 24, Ex. A at 2). Plaintiff claims that he was assigned to a room with a member of the same gang who assaulted Plaintiff in December 2004 and that Plaintiff was assaulted by his roommate on February 6, 2005 (id.). After these

- 6 -

1 attacks, Plaintiff was moved to a single room and then to another facility for his protection.

2 Taking Plaintiff's version of the facts as true, it would appear that some individual 3 failed to recognize a risk to Plaintiff's safety by placing him in a room with a member of the 4 gang who assaulted him only two months prior.  Nevertheless, Plaintiff's claim must 5 ultimately fail because Plaintiff does not allege, much less demonstrate, *who* was responsible 6 for placing him in that room with the individual who assaulted him in contravention of DI-7 67—ADC's segregation policy.  Indeed, there is nothing in the record to indicate that any 8 named Defendant was responsible for placing Plaintiff in a room with a member of the gang 9 that previously assaulted him.  Moreover, there is no evidence in the record to establish that 10 any named Defendant had any knowledge of any incident *before* it occurred.  The only 11 evidence Plaintiff has presented showing any Defendants with knowledge of the February 12 6 assault are inmate letters written two weeks *after* the incident (Doc. # 24-10 at 5-8).  But 13 any notices, inmate letters, grievances, grievance appeals, alleged correspondence to, or 14 communication with a Defendant after the alleged incident, are not sufficient to state a claim 15 for 42 U.S.C. § 1983 relief.  Subsequent knowledge or investigation, occurring "after the 16 fact," is not a sufficient basis upon which to establish § 1983 liability.  May v. Enomoto, 633 17 F.2d 164, 167 (9th Cir. 1980).  And more importantly, the inmate letters to the named 18 Defendants after the February 6 attack appear to inform them for the first time that these 19 attacks occurred.  None of the inmate letters appear to allege that Jackson, Goldsmith, or 20 Mauldin were responsible for placing Plaintiff with the individual who assaulted him or knew 21 in advance that the assault was likely to occur.  Because a plaintiff must allege that he 22 suffered specific injury as a result of the specific conduct of a defendant, and show an 23 affirmative link between the injury and that conduct, Rizzo v. Goode, 423 U.S. 362, 371-72, 24 377 (1976), and because Plaintiff has failed to make such a showing here, Defendants are 25 entitled to summary judgment with respect to the February 6 attacks.

26 ///

### B.     Deliberate Indifference to Serious Medical Needs[1]

Defendant Starr argues that there is no evidence that he was deliberately indifferent to Plaintiff's serious medical needs and that he was responsive to Plaintiff and his medical needs. Plaintiff argues that Starr knew of serious injuries to Plaintiff and "failed to protect his serious condition" (Doc. # 31 at 5). Plaintiff appears to be making two arguments with respect to Starr. First, in his Complaint, Plaintiff alleged that Starr did not properly treat his various medical conditions. Now it appears that Plaintiff is arguing that Starr failed to treat his injuries after he was assaulted. In either event, Plaintiff "rests on concrete, powerful and substantial testimony by his Physician" (Doc. # 31 at 2).

The testimony Plaintiff refers to is an unauthenticated letter from Plaintiff's personal physician detailing her opinion about the level of medical care Plaintiff has received while in ADC custody (Doc. # 24, Ex. A). Plaintiff's physician opines that Plaintiff's health has deteriorated significantly since he entered ADC custody and is in danger of death if his health continues to decline. Plaintiff places primary emphasis on this letter as proof of a material fact for trial. But Plaintiff's reliance on this letter is misplaced for at least two reasons. First, the letter is unauthenticated. "[D]ocuments which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." Id. at 1182, citing Canada v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir. 1987). And even if the letter was properly authenticated, it does not support Plaintiff's claim that *Starr* was deliberately indifferent to Plaintiff's serious medical needs. The letter does not mention Starr or any other individual by name. Plaintiff cannot rest on general allegations to support his opposition to Defendants summary judgment motion. Leer, 844 F.2d at 634. Rather, he must point to specific evidence that creates a genuine issue of material fact for trial. Indeed, the evidence Plaintiff submitted in December 2006 indicates that Starr was responsive to Plaintiff's medical concerns (Doc. # 25, Ex. E at 1-5, 7). Moreover, in Plaintiff's Affidavit (Doc. # 25, Ex. C), he fails to allege any specific conduct by Starr. Because Defendants have

---

[1] The parties do not dispute that Plaintiff has serious medical needs.

1 met their initial burden in demonstrating the absence of any material fact for trial and
2 Plaintiff has not met his burden to present evidence from which a jury could find that Starr
3 acted with deliberate indifference, Starr is entitled to summary judgment.

4     **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. # 27) is
5 **GRANTED**. This action is dismissed with prejudice and the Clerk of Court is directed to
6 enter judgment accordingly.

7     DATED this 8th day of November, 2007.

_____
Stephen M. McNamee
United States District Judge